FORET, Judge.
On August 13, 1985, defendant, Carl A. Lambert, Jr., was charged by bill of information with attempted first degree murder, armed robbery, and aggravated escape. Defendant plead not guilty to these charges. He was convicted on March 5, 1986, of attempted manslaughter, a violation of LSA-R.S. 14:27 and LSA-R.S. 14:31; armed robbery, a violation of LSA-R.S. 14:64; and aggravated escape, a violation of LSA-R.S. 14:110 C.(l). On March 11, 1986, defendant was sentenced to serve, at hard labor, ten years six months for attempted manslaughter, fifty years for armed robbery, and ten years for aggravated escape, all sentences to run consecutively. Defendant has appealed his convictions and sentences based on the following assignments of error:
(1) The trial court erred in admitting hearsay statements of the defendant through witness Brent Farmer, which did not fit any known exception to the hearsay rule.
(2) The trial court erred in admitting hearsay statements of the defendant through the testimony of witness Cynthia Wilson, made the day before the alleged crime, which did not fit any known exception to the hearsay rule and which were irrelevant.
(3) The trial court erred in admitting the photos of the crime scene.
(4) The trial court erred in admitting in evidence money allegedly stolen by defendant and found on him at the time of his capture.
(5) The trial court erred in denying defendant’s motion to suppress two confessions made by defendant.
(6) The trial court erred in imposing an excessive sentence.
FACTS
On July 2, 1985, defendant, Carl Lambert, arrived as an inmate at the Camp Beauregard Correctional Facility. Shortly after his arrival, defendant made contact with two previous acquaintances, Brent Farmer and Robert Kolzik. These two men aided defendant in his preparation to make an escape. From Farmer, defendant obtained a map which showed the nearest interstate highway. From Kolzik defendant received a screwdriver, which was later used as a weapon in defendant’s escape.
On July 21, 1986, at approximately 6:15 A.M. defendant approached the front guard shack at the correctional facility. Mrs. Cynthia Wilson was the guard on duty and in charge of clearing admittance for visitors into the compound. After engaging Mrs. Wilson in a conversation, defendant attacked her. During the attack on Mrs. *742 Wilson, defendant choked her and stabbed her with a screwdriver in the right side of her neck. Mrs. Wilson momentarily lost consciousness. Defendant took Mrs. Wilson’s keys to the compound and her purse and escaped by using the keys to open the compound’s gate. Mrs. Wilson regained consciousness and stumbled over to another building where she passed out. She was immediately transferred to the hospital where she recovered from the wounds inflicted by defendant. Through the use of bloodhounds, defendant was found at approximately 8:40 A.M. that same morning, several miles from the compound.
ASSIGNMENTS OF ERROR NOS. 1 & 2
Defendant contends that the trial court erred when it allowed witnesses Brent Farmer and Cynthia Wilson to testify as to statements the defendant made prior to the time of his escape. Defendant contends that the statements were hearsay and did not fall within any known exception to the hearsay rule. Defendant maintains that the introduction of these statements was prejudicial since it forced him to take the stand to refute the allegations made against him and thereby violated his constitutionally protected right to remain silent and relieved the State of its burden of proving his guilt beyond a reasonable doubt.
During the trial, Farmer, an inmate at Beauregard at the time of defendant’s escape, was questioned by the State regarding his knowledge of defendant’s planned escape:
“Q. What part did you play in ... in his [defendant’s] escape?
A. Well, I had told them that he told me that he had some people up in Chicago that he wanted to come down ... (Interrupted)”
At this point defense counsel objected to the witness’s testimony as hearsay. The trial judge overruled the objection and allowed the testimony. Farmer responded to continued questioning as follows:
“He [defendant] told me that he had some people in Chicago that he would like to have them come down and visit him. He asked me if I knew how they could come down from Arkansas to Camp Beauregard, what the streets were around the vicinity and I told him that I may be able to help him out, that I’d draw him a map and I’d show him how to get there, so when I went to work I had got Mr. Scroggs, my ... the officer over me at work to help me show him ... he showed me how to get from north Louisiana down to Camp Beauregard.”
The victim, Cynthia Wilson, also testified at the trial. She was questioned about her discussions with the defendant on Saturday, the day before the escape, and testified, over defense attorney’s objection, as follows:
“Well, on Saturday morning he [defendant] had come up to the front gate shack and had asked me about a visit for his grandparents, I believe, who was ... (Interrupted)”
Defendant argues that the statements by Farmer and Mrs. Wilson were inadmissible as hearsay. Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered to prove the truth of the matters asserted therein, and thus, resting for its value on the credibility of the out-of-court asserter. It is inadmissible except under statutory or well recognized exceptions. LSA-R.S. 15:434; State v. Broussard, 391 So.2d 1167 (La.1980); State v. Martin, 458 So.2d 454 (La.1984). The hearsay rule does not bar the introduction of out-of-court statements which are not offered to prove the truth of the statements’ assertion. Neither of the out-of-court statements, whose admissibility defendant questions, were offered to prove the truth of their assertions. All that defendant’s out-of-court statements asserted was that someone, relatives or friends, were planning to visit him at Camp Beauregard. Clearly, the State had no interest in proving these assertions. The statements were offered only to show that the conversations had taken place. Evidence is not hearsay when offered for this purpose *743 alone. State v. Huizar, 414 So.2d 741 (La. 1982).
ASSIGNMENT OF ERROR NO. 3
Defendant contends that the trial court erred when it allowed into evidence two photographs of the interior of the guard shack where defendant had attacked Mrs. Wilson. Specifically, defendant contends that the photographs show a screwdriver lying on the floor of the guard house, but that there was no testimony showing that the screwdriver depicted was the one used in the attack. Testimony at trial showed that the photographs, except for certain irrelevant details which were sufficiently explained, showed the guard house as it appeared after the attack on Mrs. Wilson, including the presence of the screwdriver. This testimony provided a sufficient basis for the introduction of the photographs into evidence.
ASSIGNMENT OF ERROR NO. 4
Defendant also contends that the trial court erred when it allowed into evidence ten $1 bills. At trial, it was shown that this money was discovered on defendant at the time of his apprehension, and Mrs. Wilson testified that she had ten $1 bills in her purse on the morning of the attack. Mrs. Wilson’s purse was found by bloodhounds in the woods near the correctional facility, absent this money. This testimony provided a sufficient basis for the introduction of the money into evidence.
ASSIGNMENT OF ERROR NO. 5
Defendant contends that the trial court erred in denying defendant’s motion to suppress two taped confessions defendant made after his arrest. Defendant contends that the confessions were inadmissible on several grounds. First, defendant argues that the statements were taken in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), by violating defendant’s right to counsel during custodial interrogation. Alternatively, defendant argues that the waiver of his constitutional rights was invalid because he failed to give a knowing and intelligent waiver. Additionally, defendant argues that the confessions were involuntary because they were given under the influence of fear, duress, intimidation, threats, and promises.
Defendant was captured near the correctional facility soon after his escape. Upon arrest, defendant was read his Miranda rights. Defendant was interrogated on the morning of his escape at approximately 10:30 A.M. in the Rapides Parish Sheriff’s Office. Defendant was again read his Miranda rights at this time, and he signed a waiver of rights card introduced into evidence at trial. On that morning defendant gave a taped confession. Later that day, defendant was returned to the correctional facility where Warden Larry Jeane spoke to defendant in his office and advised him of his Miranda rights. The following day, July 22, 1985, at 2:30 P.M., defendant was again interrogated. He was again advised of his Miranda rights and again signed a waiver of rights card. Defendant then gave another taped confession.
Before the State may introduce a confession into evidence, it must affirmatively prove that the statement was made freely and voluntarily and not under the influence of threats, promises, coercion, physical abuse, or intimidation. LSA-R.S. 15:451; State v. Benoit, 440 So.2d 129 (La. 1983); State v. Wilson, 467 So.2d 503 (La. 1985), U.S. cert. den., — U.S. -, 106 S.Ct. 281, 88 L.Ed.2d 246 (1986), rehearing denied, — U.S. -, 106 S.Ct. 585, 88 L.Ed.2d 567 (1985). Additionally, if the confession was made during custodial interrogation, the State must show that the defendant was advised of his Miranda rights and made a free and voluntary waiver of those rights. State v. Benoit, supra; State v. West, 408 So.2d 1302 (La.1982). As part of its burden, the State must specifically rebut the defendant’s detailed allegations of police misconduct in procuring the statement. State v. Wilson, supra.
Defendant contends that he was denied his right to counsel during his interrogations. Defendant, however, admitted that he was informed of his rights to counsel, but never asked for an attorney. It *744 appears that defendant entered an effective waiver of his right to have counsel present at his interrogation. Defendant also argues that he did not make a knowing and intelligent waiver of his right to counsel and his other Miranda rights. Although defendant admits that his rights were read to him before giving each statement, he claims that his limited educational background prevented him from understanding them.
A diminished intellectual capacity does not alone vitiate the defendant’s ability to make a knowing and intelligent waiver of Miranda rights and confess voluntarily; the critical factor is whether defendant was able to understand the rights as explained to him and voluntarily gave the statement. State v. Wilson, supra. Whether defendant waived his constitutional rights and freely and voluntarily confessed is determined by the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. State v. Benoit, supra; State v. Harvill, 403 So.2d 706 (La.1981). At the motion to suppress hearing, two of the officers who were present at defendant’s confession and the warden of Camp Beauregard testified about the events surrounding the two confessions. All three testified that when defendant was read his Miranda rights, he said he understood them and he appeared to understand them. Defendant was read his Miranda rights on at least four occasions. Each time, he answered that he understood his rights and twice he signed the waiver of rights form before giving his statements. The evidence was sufficient to rebut defendant’s claim that he had not made a knowing and intelligent waiver of his rights.
Finally, defendant contends that his confessions were not voluntary because they were given under the influence of fear, duress, intimidation, threats, and promises. Specifically, defendant claims that at the time of his capture, he was punched, kicked, and slapped by officers; that on the morning of his escape and initial interrogation, he had not eaten breakfast; and that the night before his second interrogation he did not sleep because he had no clothing and was cold and had no mattress to sleep on. Finally, defendant claims that at the time of his interrogation he was told that if he did not cooperate it would go hard on him but that if he cooperated, he would be treated leniently. The officers involved in defendant’s capture specifically rebutted defendant’s allegations of mistreatment. The officers involved in defendant’s interrogations testified that defendant was neither threatened nor offered any inducement to confess.
The trial court’s determination that defendant’s confessions were free and voluntary is entitled to great weight and will not be disturbed unless it is not supported by the evidence. State v. Wilson, supra. The record amply supports the conclusion that defendant’s confessions were free and voluntary.
ASSIGNMENT OF ERROR NO. 6
In this assignment of error, defendant maintains that the trial court failed to follow the sentencing guidelines of LSA-C. Cr.P. art. 894.1 and imposed an excessive sentence. Article 894.1 is intended to provide an impartial set of guidelines within which the trial court may exercise its sentencing discretion. State v. Douglas, 389 So.2d 1263 (La.1980); State v. Lanclos, 419 So.2d 475 (La.1982). These guidelines include both aggravating and mitigating circumstances, and the record must show that the trial judge considered the mitigating circumstances as well as those militating for imprisonment. State v. Davis, 449 So.2d 452 (La.1984); State v. Duncan, 420 So.2d 1105 (La.1982).
In the instant case, there is nothing in the record indicating that the trial court considered any mitigating circumstances. However, the failure of the trial court to comply with the sentencing guidelines does not require that the sentence be set aside if the record otherwise clearly illumines the trial court’s sentencing choice and demonstrates that the sentence is not excessive or arbitrary. State *745 v. Jett, 419 So.2d 844 (La.1982). In the present case, the record before us sufficiently illumines the trial court’s sentence and demonstrates that it is neither excessive nor arbitrary. The record shows that the defendant has, on two previous occasions, been convicted of felonies. It was while he was incarcerated for the most recent of these felonies that defendant committed the crimes with which this appeal is concerned. In mitigation, defendant points out that at the time of his escape he was 21 years old and also that he came from a broken home. However, given defendant’s previous felony convictions and the brutal nature of his attack on Cynthia Wilson, the trial court sentences were not excessive. A sentence is excessive if it is grossly disproportionate to the severity of the offense. State v. Bonanno, 384 So.2d 355 (La.1980). To make this determination, a court must consider the punishment and the crime in light of the harm to society caused by its commission in determining whether that penalty is so disproportionate to the crime committed as to shock our sense of justice. The record clearly shows that the trial judge’s sentence was not excessive.
DECREE
For the foregoing reasons, defendant’s convictions and sentences are affirmed.
AFFIRMED.
DOMENGEAUX, J., concurs.