MARC E. JOHNSON, Judge.
^Defendant, S.L.,[1] appeals his adjudications and dispositions for possession of marijuana, resisting arrest, illegal possession of a handgun by a juvenile, simple burglary, and possession of a firearm while in possession of a controlled dangerous substance.[2] For the reasons that follow, we vacate S.L.’s adjudication for possession of marijuana and reverse his adjudications and dispositions for illegal possession of a handgun by a juvenile and resisting arrest. We further vacate his adjudications and dispositions on the charges of simple burglary and possession of a firearm while in possession of a controlled dangerous substance and remand the matter for a new trial on these two charges.

IsPROCEDURAL HISTORY

On May 26, 2011, defendant was charged by petitions in juvenile court with possession of marijuana in violation of La. R.S. 40:966(C) (Petition “G”); resisting an officer by flight in violation of La. R.S. 14:108 (Petition “H”); illegal possession of a handgun by a juvenile in violation of La. R.S. 14:95.8 (Petition “I”); simple burglary of a vehicle in violation of La. R.S. 14:62 (Petition “J”); and possession of a firearm while in possession of a controlled dangerous substance in violation of La. R.S. 14:95(E) (Petition “K”). Defendant proceeded to trial on June 22, 2011, and was adjudicated delinquent on all five counts.
At the time S.L. was charged with the present offenses, he was on probation for an unrelated obstruction of justice adjudication (Petition “C”). After his adjudication for the present offenses, S.L.’s probation officer filed a motion to revoke probation. On July 21, 2011, an ad hoc judge revoked S.L.’s probation and ordered that the suspended disposition of six months be imposed. On the same day, the ad hoc judge held a disposition hearing on the present adjudications and imposed two-year dispositions on each of the five offenses to run concurrently with each other and consecutively to the six-month disposition imposed as a result of the probation revocation on Petition “C.”
One week later on July 28, 2011, the trial judge who entered the adjudications on Petitions “G-K” entered an “Order Correcting Illegal Sentence.” In her order, the trial judge vacated S.L.’s two-year disposition as to the possession of marijuana adjudication on the basis of double jeopardy.[3] The trial judge also modified *828 the dispositions for resisting an officer (Petition “H”) and illegal possession of a handgun by a juvenile (Petition “I”) to six months on each offense after finding the previously imposed two-year dispositions were illegal. The trial [Judge noted the maximum disposition for these two offenses was six months. She ordered the dispositions to run consecutively to the six-month disposition on the obstruction of justice offense and concurrently with his present adjudications.

FACTS

On May 28, 2011, Joshua Franklin noticed his 2001 Honda Accord, which had been parked at the Westwind Apartment complex in Kenner, had been burglarized. He testified the vehicle’s back door was cracked and his hair pins were scattered on the driver’s side. He further stated items from inside his car were missing. Mr. Franklin did not call the police, but rather reported the burglary to a security guard because he was running late for work.
The record does not reflect who called the police.[4] However, between 2:00 and 3:00 a.m. on May 28, 2011, several Kenner police officers responded to a radio dispatch regarding two juveniles burglarizing a vehicle at 341 Clemson and fleeing the area on bicycles. According to the radio dispatch, the juveniles were black males, one wearing a black t-shirt and blue jeans, and the other wearing a black t-shirt and camouflage shorts.
Within one to two minutes of the dispatch call, Sergeant Richie Arnold saw two juveniles matching the description of the perpetrators entering the eastbound ramp to the 1-10 on bicycles. He activated his lights and sirens and approached the juveniles, who turned and acknowledged his presence but refused to stop. According to Sgt. Arnold, the juveniles, one of whom was S.L., dropped their bicycles and began running down an alley separating the Ken-ner Police Complex and Susan Park playground towards Veterans Blvd. He yelled for the juveniles to stop, identified himself as “police,” and proceeded to chase the juveniles to [¡¡Veterans Blvd. where two other officers, Nicholas Hoffman and Charles Donovan, were waiting.
After Officer Hoffman heard the call that the suspects were running, he responded to the area and saw the juveniles cut through the parking lot of the Susan Park gym followed by Sgt. Arnold, who yelled “That’s them; that’s them.” Officers Hoffman and Donovan then “rode [the juveniles] to the ground” and detained them.
Within the next two to three minutes, Officer Hoffman walked the path the suspects had run and observed a black pistol in some bushes four to five feet off the side of the gym. The gun had six rounds in the magazine but nothing in the chamber. Another officer responding to the scene, but who arrived after the juveniles were detained, found a clear cellophane bag with green vegetable matter approximately seven feet from where the juveniles were detained. The contents of the bag later tested positive for 5.1 grams of marijuana.
Officer Donovan subsequently transported S.L. to lockup. Officer Donovan testified that S.L. appeared nervous and scared. As they waited for the officer in charge of the case to arrive at the police station, Officer Donovan developed a rap *829 port with S.L., who ultimately told him that he threw the gun while he was running, the marijuana found on the ground was his, and he attempted to break into five cars. Officer Donovan explained that when S.L. voluntarily gave this information, he was not being interrogated. However, Officer Donovan admitted asking follow-up questions to gain more details about the information S.L. provided. This conversation lasted approximately one hour, during which S.L. was never advised of his Miranda[5] rights. Thereafter, S.L.’s mother arrived at the police station. Officer Donovan apprised her of what S.L. had already told him Land asked her to execute an Advice of Rights form with her son, which she refused to do.

ISSUES

Defendant raises several issues on appeal. He first challenges the sufficiency of the evidence as to his adjudications for resisting arrest, illegal possession of a handgun by a juvenile, simple burglary, and possession of a firearm while in possession of a controlled dangerous substance. Second, he contends his adjudications for illegal possession of a firearm by a juvenile and possession of a firearm while in possession of a controlled dangerous substance violates double jeopardy. Third, S.L. argues the trial court erred in allowing inadmissible hearsay and using the hearsay as substantive evidence of his guilt. Fourth, defendant contends his two-year dispositions on all his adjudications are excessive. And, finally, defendant asserts he received ineffective assistance of counsel because his counsel failed to conduct discovery, failed to file a motion to suppress his statement, failed to file a motion to quash the petition on the basis of double jeopardy, and failed to object to illegal dispositions.

DISCUSSION

Double Jeopardy

We address the issue of double jeopardy before sufficiency of the evidence because we find it has merit and results in the reversal of defendant’s adjudication for illegal possession of a handgun by a juvenile, which renders a review of the sufficiency of evidence on this charge moot.
Defendant was adjudicated a delinquent on both charges of illegal possession of a handgun by a juvenile and possession of a firearm while in possession of a controlled dangerous substance. Defendant argues these adjudications violate double jeopardy. The State concedes this point and agrees |7S.L.’s adjudication and disposition for illegal possession of a handgun by a juvenile (Petition “I”) should be vacated.
The Double Jeopardy Clause of the United States Constitution and the Louisiana Constitution protects defendants from being punished or prosecuted twice for the same offense. State v. Sandifer, 95-2226 (La.9/5/96), 679 So.2d 1324, 1328. Under the “same evidénce” test, if evidence required to support a finding of guilt of one crime also supports a conviction for another offense, the defendant can only be placed in jeopardy for only one of the two. Id. at 1329.
In the present case, prosecution of S.L. for the illegal possession of a handgun by a juvenile required use of the same evidence presented against him under La. R.S. 14:95(E); specifically, possession of the same firearm. As such, the prohibition against double jeopardy was violated.
Where multiple punishments have been erroneously imposed in violation of double jeopardy, the proper appellate pro *830 cedure is to eliminate the effect of the less severely punishable offense. State v. Garcia, 10-755 (La.App. 5 Cir. 5/10/11), 66 So.3d 24, 28. The less severely punishable offense in this ease is illegal possession of a handgun by a juvenile, which carries a potential sentence of 90 days to six months, whereas possession of a firearm while in possession of drugs has a sentencing range of five to ten years. La. R.S. 14:95(E), 14:95.8(B). Thus, because of the double jeopardy violation, we reverse the adjudication and disposition imposed for illegal possession of a handgun by a juvenile.

Sufficiency of Evidence

We now turn to defendant’s challenge of the sufficiency of the evidence as to the remaining three adjudications: resisting arrest, simple burglary, and possession of a firearm while in possession of a controlled dangerous substance.
hWe review sufficiency of the evidence first because if the entirety of the evidence, both admissible and inadmissible, was insufficient to support the conviction, the defendant is entitled to an acquittal and no further inquiry as to trial errors is necessary. State v. Hearold, 603 So.2d 731, 734 (La.1992); State v. Jones, 05-840 (La.App. 5 Cir. 3/28/06), 927 So.2d 514, 519. On the other hand, when the entirety of the evidence, even evidence erroneously admitted, is sufficient to support the conviction, the defendant is not entitled to an acquittal, and the reviewing court must consider the assignments of trial error to determine whether the accused is entitled to a new trial. Hearold, supra.
“In order for the court to adjudicate a child delinquent, the state must prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition.” La. Ch.C. art. 883. The constitutional standard for testing the sufficiency of evidence requires that the evidence, direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt, in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). State ex rel. D.W., 09-855 (La.App. 5 Cir. 9/14/10), 47 So.3d 1048, 1053. In a juvenile delinquency proceeding, the State’s burden of proof is the same as in a criminal proceeding against an adult, to prove beyond a reasonable doubt every element of the offense alleged in the petition. Id.

Resisting Arrest

S.L. was adjudicated delinquent for resisting an officer by flight in violation of La. R.S. 14:108. S.L. argues the evidence presented at trial was insufficient to convict him because the record is devoid of proof that he took any action that could be considered “resisting Officer Matise.”
IflThe Petition filed by the District Attorney charged that “on or about the 23rd day of May, 2011, [S.L.] did intentionally violate R.S. 14:108, in that [S.L.] did intentionally oppose and resist an officer of the law, Officer Michael Matise, by flight before the arresting officer can [sic] restrain him and after notice is [sic] given that he is [sic] under arrest.” S.L. contends that the evidence showed Officer Matise did not arrive on the scene until after S.L. had been taken into custody and, therefore, the State failed to prove that he resisted Officer Matise.
Under La. R.S. 14:108, the crime of resisting an officer is “the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention ... when the offender knows or has reason to know that the person arresting, *831 detaining ... is acting in his official capacity.” In addition to its common meaning, the phrase “obstruction of’ also means “[f]light by one sought to be arrested before the arresting officer can restrain him and after notice is given that he is under arrest.” La. R.S. 14:l08(B)(l)(a).
The record shows that Officer Matise arrived at the scene after S.L. had already been taken into custody. Although Officer Matise prepared the police report for the incident and was considered the arresting officer because the incident occurred in his “area,” he had absolutely no interaction with S.L. Accordingly, we find the State failed to prove S.L. resisted Officer Matise as charged in the Petition. Because we find insufficient evidence, we reverse S.L.’s adjudication and disposition for resisting árrést.

Simple Burglary

Defendant contends the only evidence of his identity as the perpetrator was the inadmissible hearsay radio broadcast description of the suspects and his inadmissible inculpatory statement. As stated above, for purposes of sufficiency of | inthe evidence, we must consider both admissible and inadmissible evidence to determine whether all the essential elements of the offense were proven beyond a reasonable doubt. When the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the defendant is not entitled to an acquittal, and we must then consider the assignments of trial error to determine whether the defendant is entitled to a new trial. Hearold, 603 So.2d at 734.
Simple burglary is the unauthorized entering of any structure, movable or immovable, with the intent to commit a felony or theft therein. La. R.S. 14:62. In order to convict a defendant of simple burglary, the State must prove the defendant entered a structure, either movable or immovable, without authorization, and had the intent to commit a felony or theft therein. La. R.S. 14:62; State v. Vortisch, 00-67 (La.App. 5 Cir. 5/30/00), 763 So.2d 765, 768.
In addition to proving the statutory elements of the charged offense, the State is required to prove the identity of the perpetrator. State v. Searls, 04-790 (La.App. 5 Cir. 1/25/05), 895 So.2d 40, 43. The State is required to negate any reasonable probability of misidentification in order to carry its burden of proof when the key issue is identification. Id. Positive identification by one witness is sufficient to support a conviction. State v. Benoit, 07-35 (La.App. 5 Cir. 5/29/07), 960 So.2d 279, 282. Here, S.L. does not argue the State failed to prove the elements of the crime, but rather contends his identity as the perpetrator was not proven beyond a reasonable doubt.
To prove its case, the State presented the testimony of the victim, Mr. Franklin, who testified his car had been burglarized. He explained his car’s back door was cracked, his hair pins had been scattered on the driver’s side, and items were missing. He further stated he had not given anyone permission to enter his car. The State also presented the testimony of Sgt. Arnold who stated he received [ na dispatch call of a vehicle burglary involving two young black men, one wearing a black t-shirt and blue jeans and the other a black t-shirt and camouflage shorts, who were fleeing the area on bicycles. Approximately one to two minutes after the dispatch call, Sgt. Arnold observed two juveniles, matching the description, on bicycles in the vicinity of the location of the burglary. When Sgt. Arnold attempted to stop the two juveniles, one of whom was defendant, they fled on foot and were subsequently apprehended. S.L. subsequently admitted to attempting to break into five cars by lifting the door handles, but denied actually entering any of the cars.
*832 Considering S.L.’s close proximity to the scene of the crime, the fact he matched the description of the perpetrator as relayed by police dispatch, his flight at the sight of the police, and his confession that he attempted to break into several cars, we find the evidence, both admissible and inadmissible, sufficient to convict defendant of simple burglary. However, as discussed infra, we find the description of the perpetrators by police dispatch to be inadmissible hearsay, the admission of which was not harmless. Thus, S.L. is entitled to a new trial on the charge of simple burglary.

Possession of a Firearm while in Possession of a Controlled Dangerous Substance

Regarding his adjudication for possession of a firearm while in possession of marijuana, defendant contends the evidence was insufficient to show actual possession, and that the State failed to prove a connection between the firearm possession and the drug offense for purposes of constructive possession sufficient to convict under La. R.S. 14:95(E).
The State responds S.L.’s inculpatory statement established that he was in actual possession of the firearm and marijuana, negating the necessity to prové a “nexus” between the firearm and marijuana under La. R.S. 14:95(E). Although |12S.L. challenges the admissibility of his confession in a later assignment of error relating to ineffective assistance of counsel, for purposes of determining the sufficiency of evidence, we consider both admissible and inadmissible evidence.
To adjudicate S.L. delinquent for violating La. R.S. 14:95(E), the State must have proven that he (1) knowingly or intentionally possessed a firearm, while at the same time (2) knowingly or intentionally possessed a controlled dangerous substance. “Possession” under La. R.S. art. 14:95(E) includes both actual and constructive possession. State v. Blanchard, 99-3439 (La.1/18/01), 776 So.2d 1165, 1170. If actual possession cannot be established, the State is required to prove a nexus between the gun and the controlled dangerous substance. Id.
The evidence showed S.L. fled from the police and was eventually apprehended. A loaded firearm and marijuana were found near the path where S.L. had just run. After being arrested, S.L. told Officer Donovan where he had obtained the gun, that he threw it down while he was running, and that the marijuana found on the ground next to him at the time of his arrest was his. This evidence sufficiently shows S.L. was in actual possession of the marijuana and firearm. However, for reasons discussed below, we find S.L. is entitled to a new trial on this charge based on his trial counsel’s failure to file a motion to suppress his confession.

Inadmissible Hearsay as Substantive Evidence of Guilt

Defendant next argues that the only evidence of his identity as the perpetrator of the simple burglary was the description offered by the police dispatch, which he contends is inadmissible hearsay. He further asserts the admission of the hearsay evidence was not harmless because it was the only evidence establishing his identity as the perpetrator and the use of it violated his constitutional right to confront his accusers.
[ 1sThe State responds that the information in the police dispatch was properly admitted to prove the course and conduct of the police investigation which led to S.L.’s arrest. The State further asserts defendant’s right to confrontation was not violated because a police dispatch is not testimonial.
Hearsay is an oral or written assertion, other than one made by the de-clarant while testifying at the present trial, offered in evidence to prove the truth of *833 the matter asserted. La. C.E. art. 801(C). Hearsay evidence is inadmissible except as specified in the Louisiana Code of Evidence or other legislation. La. C.E. art. 802. Such evidence is excluded because the value of the statement rests on the credibility of the out-of-court asserter, who is not subject to cross-examination and other safeguards of reliability. State v. Smith, 03-866 (La.App. 5 Cir. 11/25/03), 862 So.2d 240, 244, writ denied, 04-0050 (La.5/7/04), 872 So.2d 1078.
Police officers may refer to statements made to them by other persons involved in the case in order to explain their actions. State v. Watson, 449 So.2d 1321, 1328 (La.1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985); State v. Ballay, 99-906 (La.App. 5 Cir. 2/29/00), 757 So.2d 115, 127, writ denied, 00-908 (La.4/20/01), 790 So.2d 13. Such statements are admissible not to prove the truth of the statement being made, but rather are offered to explain the sequence of events leading to the arrest of the defendant and, as such, are not hearsay. State v. Calloway, 324 So.2d 801, 809 (La.1975).
In State v. Broadway, 96-2659 (La.10/19/99), 753 So.2d 801, 808, cert. denied, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000), the Louisiana Supreme Court commented on the admissibility of information received by a police officer:
Admission of information received by a police officer in the investigation of a crime, on the basis that such information explains the officer’s presence and conduct and therefore does not constitute 114hearsay evidence, is an area of widespread abuse. McCormick on Evidence § 249 (E. Cleary 3d ed.1984). Such information frequently has an impermissible hearsay aspect as well as a permissible nonhearsay aspect, and the court in determining admissibility should balance the need of the evidence for the proper purpose against the danger of improper use of the evidence by the jury. Id. The fact that an officer acted on information received in an out-of-court assertion may be relevant to explain his conduct, but this fact should not become a passkey to bring before the jury the substance of the out-of-court information that would otherwise be barred by the hearsay rule. G. Pugh, Louisiana Evidence Law 429-431.(1974).
When an out-of-court statement, such as information received by a police officer during an investigation of a crime, has both an impermissible hearsay aspect and a permissible nonhearsay aspect, the issue of relevancy becomes significantly interrelated with the hearsay issue. If the nonhearsay content of the statement has little or no relevance, then the statement should generally be excluded on both relevance and hearsay grounds. Marginally relevant nonhear-say evidence should not be used as a vehicle to permit, the introduction of highly relevant and highly prejudicial hearsay evidence which consists of the substance of an out-of-court assertion that was not made under oath and is not subject to cross-examination at trial.
The police dispatcher’s physical descriptions of the juvenile suspects were not needed to show why the officers reported to the area of the burglary. The officers’ testimony was used to show not only why the officers acted as they did, but also to prove identity of the perpetrators. When Sgt. Arnold spotted S.L. riding his bike towards the eastbound ramp of 1-10, he recognized that S.L. fit the description he had heard over the police radio. When the officers apprehended S.L. in the parking lot of the Susan Park playground, they did so because S.L. met the clothing description relayed by the police dispatcher who *834 had obtained the description of the suspects from an unidentified source.
In State v. Arbuthnot, 367 So.2d 296 (La.1979), the Louisiana Supreme Court reversed a defendant’s conviction on the basis of a police officer’s hearsay testimony regarding a non-testifying witness’ positive identification of the defendant. Although another eyewitness identified the defendant, the supreme court reasoned that the hearsay description of the non-testifying witness h (¡improperly bolstered the State’s identification testimony by its only identification witness.[6] Id. at 298-99.
In this case, both Officer Matise and Sgt. Arnold were notified of the offense and the suspects’ descriptions by a police dispatcher, who received the information from an unidentified caller. Other than the police officers who responded to the dispatch call, Mr. Franklin, the victim of the simple burglary, was the only other witness to testify and his testimony was very limited. He did not testify that he observed the individuals who burglarized his car, and he did not testify that he provided a description of the suspects to the police. Further, Mr. Franklin did not make an in-court, or out-of-court, identification of S.L. as the individual who burglarized his car. The State called no other witnesses to explain the origin of the police transmission or to identify S.L. as the perpetrator.[7]
The erroneous admission of hearsay testimony is subject to a harmless error analysis. State v. Wille, 559 So.2d 1321, 1332 (La.1990); State v. Davis, 06-402 (La.App. 5 Cir. 11/28/06), 947 So.2d 48, 57, writ denied, 07-0003 (La.9/14/07), 963 So.2d 996. The proper inquiry is whether the guilty verdict rendered was surely unattributable to the error. Factors to be considered in making this determination include: (1) the importance of the witness’ testimony; (2) the cumulative nature of the testimony; (3) the existence of corroborating or contradictory evidence regarding the major points of the testimony; (4) the extent of cross-examination permitted; and (5) the overall strength of the State’s case. Id. at 57.
|1fiWe cannot say the erroneous admission of hearsay evidence was harmless error in this case. The State’s case against defendant was circumstantial. The physical description given by an unknown person to the police dispatcher was clearly used to link S.L., who was not in possession of any stolen goods at the time of his arrest, to the burglary of Mr. Franklin’s car. Accordingly, we find the erroneous admission of the police dispatch regarding the physical description of the perpetrators was not harmless because it was used to directly link defendant to the crime.[8] As such, defendant is entitled to a new trial on the charge of simple burglary.

*835
Ineffective Assistance of Counsel

In his final assignment of error, defendant argues he was denied effective assistance of counsel because his attorney failed to file discovery requests, failed to file a motion to suppress S.L.’s inculpatory statement, failed to file a motion to quash the charges which violated the double jeopardy clause, and failed to object to the illegal dispositions.
La. Ch. C. art. 809(A) provides that “[a]t every stage of proceedings under this Title, the accused child shall be entitled to counsel.” Juvenile defendants as well as adults are entitled to effective assistance of counsel. State in Interest of D. McK, 589 So.2d 1139, 1142 (La.App. 5th Cir.1991).
A claim of ineffective assistance of counsel is analyzed under the two-prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish his attorney was ineffective, defendant must first show that counsel’s performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the “counsel” guaranteed a defendant by the Sixth Amendment. |17The relevant inquiry is whether counsel’s representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. Strickland, supra. The assessment of an attorney’s performance requires his conduct to be evaluated from counsel’s perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel’s judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. State v. Cambre, 05-888 (La.App. 5 Cir. 7/25/06), 939 So.2d 446, 460, writ denied, 06-2121 (La.4/20/07), 954 So.2d 158.
Second, defendant must show that counsel’s deficient performance prejudiced his defense. This element requires a showing that the errors were so serious as to deprive the defendant of a fair trial, i.e., a trial which result is reliable. The defendant must show actual prejudice before relief will be granted. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that but for counsel’s unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Strickland, supra.
No pre-trial or post-trial motions were filed on behalf of S.L. Defendant contends that his trial counsel was deficient in failing to file a motion to suppress his inculpa-tory statement. The State responds that the outcome would have been the same even if the statement had been excluded because the trial court expressly disregarded the confession and found sufficient evidence to convict S.L.
Our first inquiry is whether trial counsel’s failure to file a motion to suppress S.L.’s statement was deficient. We find it was.
In Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), the United States Supreme Court stated that the prosecution may not 11suse a statement, whether exculpatory or incul-patory, stemming from custodial interrogation of a defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. State v. Hunt, 09-1589 (La.12/1/09), 25 So.3d 746, 750, n. 2. The constitutional privilege against self-incrimination and the right to counsel apply equally to juveniles and adults. State v. Terrick, 03-515 (La.App. 5 Cir. 9/30/03), 857 So.2d 1153, 1159, writ denied, 03-3272 (La.3/26/04), 871 So.2d 346.
*836 Before an inculpatory statement during a custodial interrogation may be introduced into evidence, the State must prove beyond a reasonable doubt that the defendant was first advised of his Miranda rights, that he voluntarily and intelligently waived these rights, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducements, or promises. Hunt, 25 So.3d at 754.
The obligation to provide Miranda warnings attaches when a person is questioned by law enforcement after he has been taken into custody or otherwise deprived of his freedom of action in any significant way. Miranda, 384 U.S. at 444, 86 S.Ct. at 1612; State v. Payne, 01-3196 (La.12/4/02), 833 So.2d 927, 934. As such, Miranda warnings are applicable only when it is established that the defendant has been subject to a “custodial interrogation.” [9] Hunt, 25 So.3d at 754. Interrogation under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. Payne, 833 So.2d at 938.
| ^Spontaneous and voluntary statements, not given as a result of police interrogation or compelling influence, are admissible without Miranda warnings even where a defendant is in custody. State v. Castillo, 389 So.2d 1307, 1310 (La.1980), cert. denied, 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1004 (1981). Police officers are not obliged to ignore spontaneous and unsolicited statements by someone in custody, as long as the statements do not result from police-initiated custodial interrogation or questioning “reasonably likely to elicit an incriminating response.” State v. Ross, 95-1798 (La.3/8/96), 669 So.2d 384, 386.
A determination of whether a waiver of constitutional rights was knowing and voluntary is made on a case-by-case basis, and such a determination rests upon the totality of the circumstances. State v. McGee, 04-963 (La.App. 5 Cir. 1/11/05), 894 So.2d 398, 407, writ denied, 05-593 (La.5/20/05), 902 So.2d 1050. In juvenile delinquency cases, when determining the validity of a waiver, courts should consider the totality of the circumstances, which includes an assessment of the “juvenile’s age, experience, education, background, and intelligence and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights.” State v. Fernandez, 96-2719 (La.4/14/98), 712 So.2d 485, 487 (citation omitted).
In the instant matter, S.L., a 16-year-old juvenile, who had a history of criminal behavior at the time of his arrest, admitted to Officer Donovan that he possessed the gun and the marijuana. He gave the statement without having been advised of his Miranda rights and without being provided an opportunity to speak with his mother. Officer Donovan described S.L. as being scared and nervous. Although Officer Donovan testified that he did not “interrogate” S.L. to obtain a confession, he admitted that he conversed with S.L. for 30-60 minutes and asked |2qS.L. rebuttal questions in response to the information S.L. provided. ■ Officer Donovan could not say even how the conversation began.
*837 S.L.’s statement was made during an extended one-on-one conversation at the police station, and not at the scene or immediately after the crime was committed. Further, S.L.’s “confession” was provided while he was in handcuffs at the police station, in a room alone with an officer who, by his own admission, developed a rapport with S.L. and gained his trust. Knowing that S.L.’s statement was likely inadmissible, Officer Donovan even informed S.L. “I don’t know that this can even be used because your mom’s not here and we did not advise you of your rights.” Officer Donovan then attempted to correct the legal deficiencies on how the statement was obtained by requesting that S.L.’s mother execute an Advise of Rights form, which she refused to do.
We find these circumstances show S.L.’s statement was obtained pursuant to Officer Donovan’s compelling influence and, thus, would have been suppressed had trial counsel filed such a motion.[10] As such, we find trial counsel’s failure to file a motion to suppress the statement to be deficient.
We further find defendant was prejudiced by his trial counsel’s deficient performance and, thus, is entitled to a new trial. Specifically, without S.L.’s confession, actual possession cannot be proven. Thus, the State would have been required to prove constructive possession and a nexus between the possession of the firearm and the possession of marijuana. To establish constructive possession, the State must show a defendant had dominion and control over the contraband. A connection between the gun and the drug offense may be established by considering (1) the type of firearm involved; (2) the type of controlled dangerous substance involved; (3) the quantity of drugs involved; (4) the proximity of the |⅞1 firearm to the drugs; (5) whether the firearm is loaded; and (6) any other relevant evidence. State v. Blanchard, 99-3439 (La.1/18/01), 776 So.2d 1165, 1170-73.
In this case, Sgt. Arnold testified that the two juvenile suspects attempted to avoid apprehension by fleeing on foot down an alley containing bushes between the Susan Park playground and the Kenner Police Department. When Sgt. Arnold finally caught up to them, they had been apprehended by two other officers. Sgt. Arnold did not observe S.L. discard any objects while he was in pursuit of S.L.
Officer Hoffman testified that he first observed the suspects running through the parking lot in front of the gym where they were apprehended. He also did not observe S.L. discard any objects. A search of the alley where the suspects had run revealed a gun located in some bushes. The distance between the gun and the location where S.L. was arrested was approximately 30 to 40 yards. The bag of marijuana as found approximately seven feet from where S.L. had been arrested. Both juveniles, S.L. and his co-defendant, were arrested; however, because of his confession, only S.L. was charged with possession of the gun and marijuana.
Although the trial court indicated it did not consider S.L.’s statement in its adjudication of S.L., we were obligated to consider it when addressing the sufficiency of the evidence because it was introduced as evidence at trial, and we must consider all admissible and inadmissible evidence. Without S.L.’s confession, we believe there was insufficient evidence to adjudicate S.L. delinquent on the possession of a firearm while in possession of marijuana charge. We do not find the above evidence sufficiently establishes S.L. had constructive possession of the firearm found in the *838 bushes or that there was a nexus between the gun and the marijuana. Therefore, we find defendant was prejudiced by his trial counsel’s failure to file a motion to suppress the evidence.

TERRORS PATENT

This Court has determined a juvenile is entitled to an errors patent review under La.C.Cr.P. art. 920. State in Interest of C.D., 95-160 (La.App. 5 Cir. 6/28/95), 658 So.2d 39, 41.
Upon review, we note S.L. is correct in his argument on appeal that the trial court erred in only vacating the disposition for the offense of possession of marijuana after determining there was a double jeopardy violation. To remedy a violation of double jeopardy, the court is required to vacate the conviction and sentence for the less severely punishable offense. State v. Garcia, 10-755 (La.App. 5 Cir. 5/10/11), 66 So.3d 24, 28. Thus, we vacate S.L.’s adjudication for possession of marijuana.

DECREE

For the reasons discussed above, we vacate S.L.’s adjudication for possession of marijuana and reverse his adjudications and dispositions for illegal possession of a handgun by a'juvenile and resisting arrest. We further vacate his adjudications and dispositions on the charges of simple burglary and possession of a firearm while in possession of a controlled dangerous substance and remand the matter for a new trial on these two' charges.

REVERSED IN PART; VACATED IN PART; REMANDED FOR FURTHER PROCEEDINGS

. Due to the requirements of confidentiality of juvenile proceedings as set forth in La. Ch.C. art. 412, defendant, age 16 at the time of the charge offenses, is referred to by initials only.

. We note that two of these adjudications, illegal possession of a handgun by a juvenile and resisting an officer, are misdemeanors. Under La. Ch.C. art. 330, a juvenile may appeal any final judgment of the juvenile court to the court of appeal. Thus, a juvenile is entitled to an appeal whether he has been adjudicated on a felony-grade offense, a misdemeanor-grade offense, or both. Therefore, all charges are properly before this Court on appeal. See State in re J.L., 08-538, *3 (La.App. 3 Cir. 10/1/08), 2008 WL 4414755, unpublished opinion. [This case is published on the Third Circuit’s website and, therefore, may be cited as authority despite the fact it is not designated for publication. See La. C.C.P. art. 2168.]

.The trial court failed to vacate defendant’s adjudication for possession of marijuana, *828 which is an issue that is discussed infra as an error patent.

. During Officer Michael Matise's testimony, he stated that he took a statement from "the guy that notified the police.” However, the prosecutor responded, "[w]e don't need to go further into that,” and the identification of that person was never presented into evidence.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

.See also State v. Broussard, 391 So.2d 1167 (La.1980), where the supreme court found testimony regarding the identification of the defendant as the perpetrator of the crime by eyewitnesses who were not present at trial to be inadmissible hearsay that contributed to the verdict and constituted reversible error; and. State v. Smothers, 05-781 (La.App. 5 Cir. 3/28/06), 927 So.2d 484, where this Court found the testimony of law enforcement officers regarding an anonymous caller's report of a crime in progress was harmful inadmissible hearsay requiring reversal because it was used to directly link the defendant to the crime.

. As previously noted, Officer Matise indicated during his testimony that he interviewed the individual who provided the description of the simple burglary suspects to the police dispatcher; however, the individual was never called to testily.

. Although defendant admitted in his statement that he attempted to break into five cars, we find his statement inadmissible for reasons discussed infra in our discussion of ineffective assistance of counsel.

. "... the compulsion to speak in the isolated setting of the police station may well be greater than in courts or other official investigations, where there are often impartial observers to guard against intimidation or trickery.” Miranda, 384 U.S. at 461, 86 S.Ct. at 1621, 16 L.Ed.2d at 716.

. We note the trial court seemed to recognize the inadmissibility of S.L.’s statement when it specifically disregarded the statement in adjudicating defendant a delinquent.